Larry DAVIS, Plaintiff,

v.

**SPANISH COALITION FOR JOBS, INC., Defendant.**

No. 87 C 8573.

United States District Court, N.D. Illinois, E.D.

Jan. 14, 1988.

Larry Davis, pro se.

Harold C. Hirshman, Christopher J. Petrini, Sonnenschein, Carlin, Nath & Rosenthal, Chicago, Ill., for defendant.

## ORDER

BUA, District Judge.

This matter concerns defendant's motion to dismiss and for summary judgment pursuant to Fed.R.Civ.P. 12(b)(6) and 56. For the reasons stated herein, defendant's motion is granted and plaintiff's complaint is dismissed in its entirety.

## I. FACTS

Defendant Spanish Coalition For Jobs, Inc., ("Spanish Coalition") receives *federal* funding under the Job Training Partnership Act, 29 U.S.C. § 1501 *et seq.* ("JTPA"), administered through the Mayor's Office of Employment and Training for the City of Chicago, Illinois ("MET"). Plaintiff Larry Davis ("Davis"), a black person, was enrolled in a federally subsidized job training program operated by Spanish Coalition. Davis charges that after he questioned Spanish Coalition's credentials for receiving federal job training funding, he received the following retort from Spanish Coalition's program development director: "Nigger, do not ever tell a white man about the law. Because you a black, Spanish Coalition For Jobs will discriminate against you." The following day, Davis and the program development director had a dispute concerning Davis' alleged failure to comply with certain program requirements. The dispute ended with Davis being terminated from the job training program. Davis claims that because he was not dismissed from the job training program according to established termination policies, his termination was improper and racially motivated. Davis prays for $100,-000 in damages and an injunction prohibiting Spanish Coalition from receiving federal funding for a period of three years.

Prior to filing this action, Davis requested and received an administrative hearing before MET, the local governmental agency supervising federally funded job training programs under the JTPA. According to MET hearing procedures, both parties were given the option of retaining counsel to appear at the hearing. After each side was afforded an opportunity to present evidence, offer testimony, and assert arguments, the hearing officer issued a written opinion rejecting Davis' claim he was terminated on the basis of racial discrimination. The hearing officer found that "[Spanish Coalition] acted properly in terminating [Davis] due to his failing grades, refusal to take a previously scheduled and required test and due to his overall attitude towards the program." According to the hearing officer, nothing existed in the record substantiated Davis' assertion his dismissal from the program was the product of racial discrimination. The hearing officer's order issued on October 16, 1987. However, on October 1, 1987, Davis filed the instant action.

## II. DISCUSSION

As a procedural aside, this court treats Spanish Coalition's motion to dismiss as both a motion to dismiss and a motion for summary judgment pursuant to Fed.R. Civ.P. 12(c). Certain arguments asserted by Spanish Coalition in reply to Davis' response memorandum rely upon matters outside the pleadings. As such, those arguments will be addressed in the context of Fed.R.Civ.P. 56.

### A. *Title VI Claim*

As with any motion to dismiss, all well pled facts are taken as true and all reasonable inferences are drawn in the plaintiff's favor. *Wolfolk v. Rivera*, 729 F.2d 1114, 1116 (7th Cir.1984). Davis asserts his racial discrimination claim under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. ("Title VI"). According to his complaint, Davis seeks two forms of relief as a result of his allegedly discriminatory termination from a job training program run by Spanish Coalition: an award of monetary damages and an injunction prohibiting Spanish Coalition from receiving JTPA funding for a period of three years. Spanish Coalition argues that Title VI does not provide either form of requested relief. As such, Spanish Coalition contends that Davis' complaint must be dismissed.

■ As noted by Spanish Coalition, Title VI does not make monetary damages available for individuals who have suffered discriminatory treatment under a federally funded program. *Drayden v. Needville Independent School Dist.*, 642 F.2d 129, 133 (5th Cir.1981) (redress for violation of § 2000d "does not include the right to recover back pay or other losses, which the appellants seek in this action"); *Concerned Tenants Ass'n v. Indian Trails Apartments*, 496 F.Supp. 522 (N.D.Ill.1980) ("no

private right of action exists under Title VI for monetary damages").

■ Similarly, Spanish Coalition is correct in asserting that Davis is without standing to obtain an injunction prohibiting Spanish Coalition from receiving federal job training funding. A private plaintiff such as Davis has no cause of action under Title VI to compel funding -termination. *Chowdhury v. Reading Hosp. and Medical Center*, 677 F.2d 317, 320 n. 7 (3d Cir.1982); *NAACP v. Medical Center, Inc.*, 599 F.2d 1247, 1254 n. 27 (3d Cir.1979). Only the Secretary of Labor is authorized to take such action after conducting an investigation and hearing. 42 U.S.C. § 2000d–1; 29 U.S.C. § 1577(b)(2). Although Davis is entitled to file a complaint concerning his treatment at Spanish Coalition with the Secretary of Labor, he lacks standing to obtain such remedial relief. Since Davis does not seek reinstatement with Spanish Coalition, but only forms of relief to which he is not entitled, his claim under Title VI must be dismissed.

## B. § 1343 and § 1981 Claims

■ In his response to Spanish Coalition's motion to dismiss, Davis asserts that he is entitled to monetary damages for his alleged discriminatory termination under 28 U.S.C. § 1343 and 42 U.S.C. § 1981. Spanish Coalition argues, however, that these claims are barred under principles of administrative *res judicata*. This court agrees.

As previously noted, Davis requested and received a hearing by MET concerning his termination from Spanish Coalition. According to procedures governing administrative review of complaints lodged against JTPA participants under the supervision of MET, after an adverse determination by the hearing officer, the aggrieved party is entitled to seek review before an administrative board of the Illinois Department of Commerce and Community Affairs ("IDCCA"). The decisions of IDCCA in turn are subject to judicial review by the state circuit court under the provisions of the Administrative Review Act (former Ill. Rev.Stat. ch. 110 ¶ 264 *et seq.* [repealed; see, now, Ill.Rev.Stat. ch. 110 ¶ 3–101 *et seq.*]). Davis, however, declined to appeal the adverse administrative ruling and instead initiated the present action.

"When a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's fact-finding the same preclusive effect to which it would be entitled in the State's courts." *University of Tennessee v. Elliot*, ⸺ U.S. ⸺, 106 S.Ct. 3220, 3227, 92 L.Ed.2d 635 (1986) *citing United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966). In *Elliot* the Supreme Court found that "Congress in enacting the Reconstruction Civil Rights Statutes, did not intend to create an exception to general rules of preclusion." *Id.* at ⸺, 106 S.Ct. at 3225. Noting that principles of *res judicata* apply to administrative agency decisions made in a judicial capacity, the Court reasoned that such principles also should apply to administrative agencies adjudicating civil rights claims. *Id.* at ⸺, 106 S.Ct. at 3226–27. Given that the plaintiff had received an administrative adjudication of his discrimination claim, the Court ruled that the same claim brought under the Reconstruction Civil Rights Statutes was barred by *res judicata*. *Id.* However, the Court found that Congress did not intend that prior administrative proceedings preclude Title VII claims in federal court. *Id.* at ⸺, 106 S.Ct. at 3225.

Relating the facts in the present case to the test enunciated in *Elliot*, the first issue is whether MET was acting in a judicial capacity when it considered and ruled upon Davis' discriminatory termination claim. Reviewing the language of the order issued by MET, it appears as though this requirement is met. The October 16, 1987 order notes, *inter alia*, that each party could choose to retain and be represented by counsel at the hearing; that evidence, exhibits and testimony were offered and received; that both parties were present for the hearing and made arguments that were heard by the MET hearing officer; and

that a record of all proceedings was made and preserved. Unlike hearings which take the form of a unilateral investigatory proceeding in which the aggrieved party is unable to present his contentions and offer supporting evidence, the procedures followed by MET in conducting the hearing clearly show the agency was acting in a judicial capacity when it dismissed Davis' claim. *See Buckhalter v. Pepsi–Cola General Bottlers, Inc.,* 768 F.2d 842, 851–52 (7th Cir.1985), *vacated on other grounds* — U.S. —, 106 S.Ct. 3328, 92 L.Ed.2d 735 (1986).

The next step in the *Elliot* test requires a determination of whether MET's findings would be entitled to preclusive effect under the law of Illinois. Generally, Illinois law requires application of the doctrine of *res judicata* when the following elements are met: (1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the early and the later suit; and (3) an identity of the parties or their privies in the two suits. *Lee v. City of Peoria,* 685 F.2d 196, 199 (7th Cir.1982); *McNely v. Board of Educ.,* 9 Ill.2d 143, 151–52, 137 N.E.2d 63 (1956).

The order issued by MET dismissing Davis' claim is a final judgment on the merits. According to the procedures previously noted, Davis was entitled to appeal the MET ruling to IDCCA, the state administrative agency within ten days of his receipt of the October 16, 1987 decision. Judicial review in the Cook County Circuit Court would then have been available to Davis if he failed to prevail before IDCCA. Because Davis failed to appeal the MET order, the order is a final judgment capable of having preclusive effect. *See Buckhalter v. Pepsi–Cola General Bottlers, Inc.,* 768 F.2d 842, 852 (7th Cir.1985), *vacated on other grounds* — U.S. —, 106 S.Ct. 3328, 92 L.Ed.2d 735 (1986). The second and third requirements for *res judicata* are also met. Davis is alleging the same claim he raised in the MET proceeding: race discrimination. That Davis now alleges violations of 28 U.S.C. § 1343 and 42 U.S.C. § 1981 instead of violation of the JTPA's

prohibition of discrimination is not important. All of Davis' claims relate to the same incident and arise from the same core of operative facts. *See Lee v. City of Peoria,* 685 F.2d 196, 201 (7th Cir.1982); and *Washington v. Groen Division/Dover Corp.,* 634 F.Supp. 819, 821 (N.D.Ill.1986). Similarly, because the parties at the MET hearing and the instant suit are the same, an identity of parties in the two actions is present. Accordingly, the prerequisites for application of *res judicata* exist.

Finally, like in *Elliot,* the claims at issue advanced by Davis are based on alleged violations of Reconstruction Civil Rights Statutes. *See Examining Bd. of Eng'rs, Architects, & Surveyors v. Flores de Otero,* 426 U.S. 572, 581–82 n. 11, 96 S.Ct. 2264, 2271–72 n. 11, 49 L.Ed.2d 65 (1976) (the provisions codified at 28 U.S.C. § 1343 and 42 U.S.C. § 1983 were originally enacted as Section One of the Ku Klux Klan Act of 1871); and 42 U.S.C.A. § 1981 (West 1981) (Historical Note states that Section 1981 is from Act May 31, 1870, c. 114 § 16, 16 Stat. 144). Since the facts in the present case meet the standards set forth in *Elliot* for application of administrative *res judicata,* Davis' § 1343 and § 1981 claims are barred. As such, Spanish Coalition's motion for summary judgment is granted.

### III. CONCLUSION

In light of the foregoing, plaintiff's claim under 42 U.S.C. § 2000d is dismissed as plaintiff is not entitled to the relief he seeks.[1] Additionally, plaintiff's claims under 28 U.S.C. § 1343 and 42 U.S.C. § 1981 are barred from retrial under the doctrine of administrative *res judicata.* As such, defendant's motion to dismiss and for summary judgment is granted, and plaintiff's action is dismissed in its entirety.

IT IS SO ORDERED.

---

1. If plaintiff so desires, he may file an amended complaint seeking reinstatement in the job training program at Spanish Coalition under

Title VI, as such relief is available to private litigants under § 2000d.